# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| INCOMM HOLDINGS, INC., and INTERACTIVE COMMUNICATIONS INTERNATIONAL, INC., |  |
| Plaintiffs, | Civil Action No._____ |
| v. | **JURY TRIAL DEMANDED** |
| GREAT AMERICAN INSURANCE COMPANY, |  |
| Defendant. |  |

## COMPLAINT

Plaintiffs InComm Holdings, Inc. and Interactive Communications International, Inc. (collectively, "InComm") file this Complaint and Request for Declaratory Judgment against Great American Insurance Company ("Great American"), alleging as follows:

### I.    INTRODUCTION

1.    This is an insurance coverage dispute arising out of the hacking of InComm's computer system that processes InComm's Vanilla Reload Network, resulting in a loss of over $11 million.

2.     Defendant Great American issued a Crime Protection Policy to InComm which provides coverage for computer fraud.  Great American has breached its Crime Protection Policy with InComm by wrongfully refusing to provide coverage for InComm's loss.

3.     InComm seeks recovery of all damages caused by Great American's unlawful conduct and a declaratory ruling from the Court as to the parties' rights and obligations under the Crime Protection Policy at issue.

4.     InComm also seeks recovery pursuant to O.C.G.A. § 33-4-6, of a 50% penalty from Great American on all sums owed to InComm, plus all reasonable attorneys' fees incurred by InComm in pursuing its claims against Great American.

## II.     PARTIES, JURISDICTION AND VENUE

5.     Plaintiff InComm Holdings, Inc. is, and at all relevant times has been, a corporation organized under the laws of Georgia, with its principal place of business located in Georgia.

6.     Plaintiff Interactive Communications International, Inc. is a wholly owned subsidiary of InComm Holdings, Inc. and is, and at all relevant times has been, a corporation organized under the laws of Florida, with its principal place of business located in Georgia.

7.    Defendant Great American is, and at all relevant times has been, a corporation organized under the laws of Ohio, with its principal place of business located in Ohio.  Great American is an insurer authorized to do business in the State of Georgia.

8.    The Court has personal jurisdiction over Great American, a non-resident insurance company, because Great American purposefully availed itself of the privileges and benefits of conducting business in the State of Georgia by offering a policy of insurance to InComm, and by entering into a contract of insurance with InComm in Georgia.   Furthermore, Great American listed a Georgia address for InComm on an executed copy of the insurance policy at issue, which was issued and delivered to InComm at its corporate headquarters in Georgia.   This lawsuit arises out of Great American's contacts with the State of Georgia.

9.    This Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Complete diversity of citizenship exists because Plaintiff InComm Holdings is a citizen of Georgia, Plaintiff Interactive Communications International is

a citizen of Florida and Georgia and Defendant Great American is a citizen of Ohio.

10.    Venue is proper in this District under the provisions of 28 U.S.C. § 1391 because a substantial part of the events giving rise to InComm's claims occurred in this District.

### III.    FACTUAL BACKGROUND

#### A.    InComm's Business.

11.    InComm is a technology company and a leading provider of prepaid products and payment systems solutions.  One such technology, InComm's Vanilla Reload Network, allows consumers to add funds to previously established general purpose reloadable card accounts.

12.    A general purpose reloadable (GPR) card is a network-branded (VISA, MasterCard, etc.) debit card available for use by consumers to the extent that the consumer has added monetary value to the underlying GPR account.  One common method by which consumers add monetary value to GPR accounts is by purchasing a reload chit at a retail store.  At the time of purchase of the reload chit, the consumer pays the store the monetary value which is to be added to the GPR account, plus a small service fee.  The

consumer then redeems the reload chit by transferring the value placed on the chit to his or her GPR account.

13.     InComm's Vanilla Reload Network offers one-time use Vanilla Reload chits ("VRC's") which are available for purchase at various retailers. Each VRC is assigned and bears a unique number ("PIN").  Prior to purchase, VRC's reside in an inactive, unusable state, and are of no monetary value until activated.

14.     When a consumer presents a VRC to a store cashier for purchase, the VRC state is changed to active via the store's point-of-sale system and InComm's technology.  At the time of activation, the VRC PIN is assigned the applicable monetary value (from $20 to $500) based on the amount purchased by the consumer, and is then available for redemption by the consumer.

15.     A consumer "redeems" an active VRC (i.e., transfers the value of the VRC to a GPR account) by logging into InComm's Vanilla Reload website or by using InComm's computer-based IVR system and then providing the VRC's PIN and the required GPR account information.

16.     Upon redemption, InComm's systems change the VRC's state to redeemed making it no longer available for use, and InComm transfers funds

to a bank account which is held in the name of the third-party issuer of the consumer's GPR card.  The funds are then available to the consumer for spending or withdrawal.

### B.    The Reload Chit Fraud.

17.    In May of 2014, InComm became aware of a scheme whereby hackers accessed InComm's IVR system and intentionally and fraudulently submitted multiple, simultaneous requests to redeem individual VRC's (the "Reload Chit Fraud").

18.    Although each VRC contains a unique PIN that may only be redeemed once, by sending multiple, simultaneous redemption requests, the hackers manipulated InComm's computer system so that the VRC's were redeemed for their full monetary value, but then returned to an active, unredeemed state.  This, in turn, made the VRC's available for subsequent redemption and allowed the hackers to redeem VRC's multiple times, inconsistent with their intended use.

19.    Due to the Reload Chit Fraud, InComm incurred a loss of $11,471,407 as a result of approximately 25,521 duplicate fraudulent redemptions of 2,396 individual reload chits.

### C.     The Insurance Policy.

20.     InComm and Great American are parties to a Crime Protection Policy, Policy No. SAA 347-89-10-08, with a policy period of June 1, 2013 to June 1, 2014 (the "Policy").   A true and correct copy of the Policy is attached hereto as Exhibit A.

21.     The Policy provides a $10 million Limit of Insurance for each occurrence.

22.     The Policy's "Computer Fraud" Insuring Agreement provides in pertinent part that "[Great American] will pay for loss of, and loss from damage to, money, securities and other property resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the premises or banking premises ... to a person … outside those premises; or … to a place outside those premises."

### D.     InComm Sought Coverage from Great American for the Loss Resulting from the Reload Chit Fraud.

23.     On July 18, 2014, InComm timely submitted its proof of loss to Great American for the loss InComm suffered as a result of the Reload Chit Fraud.

24.     InComm's loss resulted directly from the use of a computer to fraudulently cause the transfer of money from the "banking premises" to a "person" or "place" "outside those premises."

7

25.   InComm's loss resulting from the Reload Chit Fraud is therefore covered under the Computer Fraud Insuring Agreement of the Policy.

26.   No exclusion, condition, or other term in the Policy bars or negates coverage for InComm's loss and all conditions precedent to coverage under the Policy have been satisfied.

### E.   Great American Wrongfully Denies Coverage.

27.   Over ten months after InComm submitted its proof of loss, on May 12, 2015, Great American sent InComm a letter in which it denied all coverage for the loss InComm suffered as a result of the Reload Chit Fraud.

28.   On May 21, 2015 InComm's outside counsel sent a letter to Great American contesting Great American's denial of coverage, requesting that Great American reconsider its coverage position, and providing notice of bad faith under O.C.G.A. § 33-4-6.

29.   On June 11, 2015, Great American's outside counsel sent InComm a letter reiterating Great American's erroneous coverage denial.

### F.   Great American's Denial of Coverage is a Breach of the Policy.

#### i.   InComm's Loss Was Caused by Computer Fraud.

30.   InComm's loss was caused by computer fraud and is covered under the Policy.  Great American has contended that InComm's loss on this claim

was not caused through the "use of any computer."

31.     Contrary to Great American's assertions, the Reload Chit Fraud was in fact carried out through the use of a computer because InComm's IVR system is computer-based and serves as a gateway to the core transaction processing system at InComm for the transactions at issue – namely, the APS computer system.

32.     Upon receiving a request from an auxiliary system (e.g., IVR, web sites, mobile apps, etc.), the APS computer system provides the underlying transaction processing.   Accordingly, the hackers directly interfaced with, manipulated, and used InComm's APS computer system.

33.     Great American also erroneously asserts that InComm's loss did not involve computer fraud because the hackers that carried out the Reload Chit Fraud did not use a computer in an unauthorized manner.

34.     But in carrying out the Reload Chit Fraud, the perpetrators fraudulently hacked InComm's APS computer system by intentionally submitting multiple, simultaneous redemption requests that subverted InComm's APS computer system so that individual reload chits were redeemed, but then returned to an active, unredeemed state.   Because the intended use of the APS System is for reload chits to be redeemed only once,

the multiple, simultaneous requests submitted by the hackers constituted an unauthorized use of InComm's APS system.

35.    The Reload Chit Fraud was thus perpetrated through the unauthorized use of a computer.

> **ii.    The Reload Chit Fraud Caused a Transfer of Money from the "Banking Premises" to a Person or Place Outside the "Premises."**

36.    In denying coverage, Great American also argues that the Reload Chit Fraud did not cause a transfer of money from the "premises" or "banking premises" to a person or place outside of those premises as required for coverage.

37.    Contrary to Great American's assertions, as a direct result of each fraudulent reload chit redemption comprising the Reload Chit Fraud, InComm was duped into transferring money from InComm's bank account into a separate cardholder account held by one of its issuing bank partners, The Bancorp Bank ("Bancorp").   Moreover, payment card transactions – such as an ATM cash withdrawal or merchant purchase – involving GPR accounts containing funds fraudulently obtained through the Reload Chit Fraud, caused money to be transferred from the cardholder account into a settlement account held by Bancorp used to settle the transactions.

10

38.    The Reload Chit Fraud therefore caused the transfer of money from the "banking premises" to a person or place outside those "premises."

### iii.    InComm's Loss Resulted Directly From the Reload Chit Fraud.

39.    Great American also claims that InComm's loss was not the direct result of the Reload Chit Fraud, but was instead a result of InComm's contractual liability to Bancorp to fund the above-described cardholder and settlement accounts.

40.    Significantly, however, InComm is not seeking coverage for third-party liability arising from its contractual obligations.  InComm is instead seeking coverage for its own, first-party loss – namely, amounts transferred and stolen because of the Reload Chit Fraud.  This is a loss covered under the Policy.

41.    The individuals carrying out the Reload Chit Fraud hacked InComm's computer system in a manner that allowed them to redeem reload chits multiple times, which caused InComm to allocate value to certain Bancorp-issued GPR card accounts and to transfer funds far in excess of the amount that was actually purchased.

42.    As a result of the unauthorized manipulation of InComm's computer system that caused the excessive values to be allocated to certain GPR cards,

11

InComm was deceived into actually transferring money from its bank account to fund transactions that would ultimately be made using those cards.

43.    There was no intervening or other cause of InComm's loss aside from the Reload Chit Fraud.

44.    InComm's loss thus resulted directly from computer fraud.

### iv.    The Reload Chit Fraud Constitutes a Single Occurrence Under the Policy.

45.    In its attempt to avoid its coverage obligations under the Policy, Great American erroneously contends that each fraudulent reload chit redemption constitutes a separate occurrence under the Policy.

46.    The Policy provides that an "occurrence," for purposes of the Computer Fraud coverage, means:

    all loss or losses caused by:

    (1) an act, or series of related acts, involving one or more persons;
    …

    (3) an act or event, or a series of related acts or events, not Involving any identifiable person.

47.    Each fraudulent redemption that was part of the Reload Chit Fraud was related because each was caused by the manipulation of InComm's APS

computer system through the submission of multiple, simultaneous requests to redeem a reload chit.

48.    Pursuant to the definition of "occurrence" under the Policy, all of the fraudulent reload chit redemptions for which InComm seeks coverage constitute a single occurrence.  Individual losses resulting from the same or a related cause constitute a single occurrence.

49.    The fraudulent reload redemptions that were part of the Reload Chit Fraud were a result of the same cause – specifically, the manipulation of InComm's APS computer system in the same manner.

50.    The multiple reload chit redemptions thus constitute a single occurrence under the Policy.

**G.    Great American's Improper Handling of InComm's Claim.**

51.    Great American unreasonably delayed its investigation of InComm's claim, stalling for nearly ten months after InComm submitted its proof of loss by purportedly investigating the Reload Chit Fraud through numerous detailed requests for information – many of which were duplicative and unwarranted.

52.    InComm fully cooperated with Great American by providing Great American, and its various experts, advisors, and consultants, with access to

InComm's facilities, systems, and employees.  InComm provided all of the information requested by Great American in multiple oral and written communications, and further, by producing a substantial number of documents and information over a 10-month period.  For example:

- Over three months after submission of the proof of loss, a conference call between InComm and GAIC was held on October 4, 2014 to answer Great American's questions related to InComm's information technology.

- On October 27 and 28, 2014, Great American conducted a two-day on-site visit at InComm's offices.

- On November 3, 2014, InComm emailed a list of items requested by Great American during its onsite visit.

- On November 24, 2014, InComm produced certain documents and information requested by Great American.

- On December 29, 2014, InComm emailed an update on the criminal investigation to Great American.

- On January 15, 2015, InComm responded to additional questions from Lowers Risk Group.

- On January 23, 2015, InComm produced additional, duplicative transaction data in the specific format requested by Great American.

- On February 3, 2015, InComm and Great American held a telephone conference to discuss additional information that Great American purportedly required in order for it to provide a coverage determination.

- On March 6, 2015, InComm produced the amendments to its agreement with Bancorp.

53.     In February 2015 (approximately seven months after Great American began investigating InComm's claim) Great American promised to provide its coverage decision to InComm within 45 days after InComm provided certain documents, only to later argue upon receipt of those documents that it actually needed an additional 45 *business* days to respond.   And while Great American eventually withdrew that position, it is indicative of Great American's overall conduct and its approach to handling InComm's claim.

## COUNT I:  BREACH OF CONTRACT

54.     InComm restates and re-alleges the allegations contained in paragraphs 1 – 53 of this Complaint as if fully stated herein.

55.     Pursuant to the express terms and conditions of the Policy, Great American has a contractual obligation to provide coverage for InComm's loss resulting from the Reload Chit Fraud.

56.     Great American has wrongfully and unlawfully refused to provide coverage for InComm's loss resulting from the Reload Chit Fraud.

57.     Great American's actions constitute an absolute and wrongful repudiation of the coverage obligations owed to InComm under the Policy.

58.     Great American is without any just cause or excuse for its breach of the coverage obligations owed to InComm under the Policy.

15

59.   InComm has suffered damages and harm as a result of Great American's breach of its obligations to InComm under the Policy without just cause.

## COUNT II:  BAD FAITH

60.   InComm restates and re-alleges the allegations contained in paragraphs 1 – 59 of this Complaint as if fully stated herein.

61.   Great American has wrongfully and unlawfully refused to provide coverage to InComm.

62.   Great American's refusal to provide coverage lacks merit and is plainly unreasonable, and there is no good faith basis for Great American's reliance on its purported coverage defenses.

63.   Great American's refusal to provide coverage for InComm's loss constitutes a frivolous, unfounded, and bad faith refusal to pay.

64.   Additionally, Great American unreasonably delayed in its investigation of InComm's claim.

65.   Pursuant to O.C.G.A. § 33-4-6, InComm is entitled to recover a 50 percent penalty from Great American on all sums owed to InComm, plus all reasonable attorney's fees incurred by InComm in pursuing its claims against Great American.

## COUNT III:  DECLARATORY JUDGMENT

66.    InComm restates and re-alleges the allegations contained in paragraphs 1 – 65 of this Complaint as if fully stated herein.

67.    A dispute exists between InComm and Great American concerning the parties' respective rights and obligations under the Policy.

68.    The facts are sufficiently established such that an actual and live controversy exists between the parties, and it is ripe for adjudication.

69.    The declarations by this Court, as prayed for below, will terminate the controversy and remove uncertainty as to the legal rights and obligations between the parties.

70.    InComm respectfully submits that this Court should exercise its power, pursuant to 28 U.S.C. §§ 2201-2202, and issue an order declaring the following:

        a. InComm's loss resulting from the Reload Chit Fraud is covered under the terms and conditions of the Policy.

        b. No exclusion, condition or other term in the Policy bars or negates coverage for InComm's loss resulting from the Reload Chit Fraud.

17

c. Because InComm's unreimbursed loss resulting from the Reload Chit Fraud exceeds the Policy's Limit of Insurance, and because all other conditions for coverage have been satisfied, Great American is obligated to pay its $10 million Limit of Insurance to InComm.

## DEMAND FOR JURY TRIAL

InComm demands a jury trial on all issues so triable.

WHEREFORE, InComm prays:

(a)    That the Court enter judgment in favor of InComm on its claims against Great American;

(b)    That the Court declare the rights and obligations of the parties, including the following declaratory rulings:

      i.   InComm's loss resulting from the Reload Chit Fraud is covered under the terms and conditions of the Policy.

      ii.  No exclusion, condition or other term in the Policy bars or negates coverage for InComm's loss resulting from the Reload Chit Fraud.

       iii.  Because InComm's unreimbursed loss resulting from the Reload Chit Fraud exceeds the Policy's Limit of Insurance, and because all other conditions for coverage have been satisfied, Great American is obligated to pay its $10 million Limit of Insurance to InComm.

(c)    That the Court enter judgment and order Great American to pay a 50 percent bad faith penalty under O.C.G.A. § 33-4-6 on all sums owed to InComm, plus all reasonable attorney's fees incurred by InComm in pursuing its claims;

(d)    That the Court enter judgment and order Great American to pay InComm pre- and post-judgment interest as allowed by law; and

(e)    That the Court award such other and further relief as may be appropriate under the circumstances.

Submitted this 28th day of July, 2015.

/s/Daniel F. Diffley
Daniel F. Diffley
Georgia Bar No. 221703
dan.diffley@alston.com
Tejas S. Patel
Georgia Bar No. 685898
tejas.patel@alston.com
Kristen K. Bromberek
Georgia Bar No. 632618
kristen.bromberek@alston.com

ALSTON & BIRD LLP
1201 W. Peachtree St.
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

*Attorneys for Plaintiffs InComm
Holdings, Inc. and Interactive
Communications International, Inc.*

## <u>LOCAL RULE 5.1B CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

This 28th day of July, 2015.

/s/Daniel F. Diffley
Daniel F. Diffley
Georgia Bar No. 221703
dan.diffley@alston.com

ALSTON & BIRD LLP
1201 W. Peachtree St.
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

*Attorney for Plaintiffs InComm Holdings, Inc. and Interactive Communications International, Inc.*